IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:25-cv-04187-SKC

OLIVER GRIJALVA ESQUIVEL,

     Petitioner,

v.

JUAN BALTASAR, *et al.*,

     Respondents.

---

# ORDER

Petitioner Oliver Grijalva Esquivel is a citizen of Guatemala who is currently being detained at the Aurora ICE Processing Center. Dkt 1, pp.3-4. Petitioner entered the United States without inspection in 2016 as a 14-year-old unaccompanied minor. *Id.* at. p.10. He was apprehended shortly after that, and one month later was released to his mother in Los Angeles, California. *Id.* He has resided continuously in the United States since his entry in 2016. *Id.* at p.11.

In December 2023, Petitioner was arrested and charged with being an accessory after the fact to smuggling. *Id.* He served his sentence, and after his release in March 2024, was taken into ICE custody. *Id.* ICE placed Petitioner in expedited removal proceedings, and an immigration judge denied Petitioner's request for a custody redetermination, finding that the court lacked jurisdiction

because Petitioner was subject to mandatory detention. *Id.* Petitioner has been detained in Aurora since June 2024. *Id.* at p.12. He is being held without bond purportedly pursuant to 8 U.S.C. § 1225(b)(2). Dkt. 10, p.13.

Mr. Grijalva Esquival filed a Petition for Writ of Habeas Corpus on December 29, 2025, seeking an order from this Court declaring that he is a member of two certified classes and directing Respondents to release him or provide a bond hearing within seven days of an order from this Court. Dkt. 1, p.15. This Court ordered Respondents[1] to respond to the Petition within five calendar days of service and show cause why it should not be granted. Dkt. 5. Respondents filed their Response on January 7, 2026 (Dkt. 10), and Petitioner filed a Reply on January 9, 2026. Dkt. 11.

The Court has jurisdiction over this matter pursuant to Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he traditional function of the writ is to secure release from illegal custody." *Id*. Noncitizens may properly challenge the lawfulness of their detention through habeas

---

[1] "Respondents" refers to Juan Baltasar, the Warden of the Aurora Contract Detention Facility; Robert Hagan, the Field Office Director of the Denver ICE Field Office; Kristi Noem, the Secretary of the United States Department of Homeland Security; Todd Lyons, the Acting Director of ICE; and Pamela Bondi, the United States Attorney General.

proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

The Court has considered the Petition, the Response, the Reply, the various attachments, and the governing law. Because Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243. For the reasons shared in the following discussion, the Court GRANTS the Petition.

## STATUTORY FRAMEWORK

### A.    The Removal Processes

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 established two main processes for removing noncitizens who are deemed ineligible to enter or remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). The "usual removal process"—commonly referred to as "Section 240"—involves an evidentiary hearing before an immigration judge, where a noncitizen may "attempt to show that he or she should not be removed." *Id.* at 108. These are adversarial proceedings where noncitizens have the right to hire counsel, examine the evidence against them, present their own evidence, and cross-examine witnesses. 8 U.S.C. § 1229a(b)(4)(A)–(B). These proceedings are recorded, often take months to resolve, and upon a decision by an immigration judge, are appealable to the Board of Immigration Appeals. 8 C.F.R. §§ 1003.1, 1240.15. The BIA order is, in turn, appealable to a U.S. Court of Appeals. 8 U.S.C. § 1252.

The second process provides for expedited removal. 8 U.S.C. § 1225(b)(1). Under this provision, noncitizens who satisfy two criteria may be subject to expedited

removal. 8 U.S.C. § 1225(b)(1). Under the first criterion, the noncitizens are "inadmissible" to the United States because they either lack proper entry documents or they engaged in fraud or willfully misrepresented a material fact on their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i). The second criterion provides that the noncitizens fall into at least one of two categories: (1) they are "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i) ("Arriving [Noncitizen] Provision"); and or (2) they "have not been admitted or paroled" into the United States and have "not affirmatively shown" to an immigration officer's satisfaction that they have been "physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]" *id.* § 1225(b)(1)(A)(iii)(II) ("Designation Provision").

In contrast to the usual removal process, "the expedited removal order is usually issued within a few days, if not hours." *Make the Rd. New York v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025). In these proceedings, noncitizens typically have no opportunity to review the evidence against them or prepare a defense. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii). And there is almost no opportunity for judicial review. 8 U.S.C. § 1252(a)(2)(A).

## B.    The Detention of Noncitizens

The Immigration and Nationality Act contemplates two options for detaining noncitizens pending removal proceedings. *Hernandez v. Baltazar*, No. 1:25-cv-03094-

CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025). The first, § 1225, enumerates the procedures by which the government must detain certain "applicants for admission" into the United States. 8 U.S.C. § 1225(a)(1). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrived in the United States." *Id.* The INA defines "admission" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by the immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225(b) requires the detention of two groups of "applicants for admission." *See* 8 U.S.C. § 1225(b)(1), (2). To the first grouping, § 1225(b)(1), *supra*, applies to noncitizens who (1) are inadmissible because they lack proper documentation or because they engaged in fraud or willful misrepresentations in their applications, *and* (2) fall within the "Arriving [Noncitizen] Provision" or the "Designation Provision." 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). To the second grouping, § 1225(b)(2) applies "in the case of [a noncitizen] who is an applicant for admission, [where] the examining immigration officer determines that [the noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Noncitizens detained under § 1225, no matter which grouping, are not entitled to bond hearings. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).[2]

Section 1226, by contrast, authorizes the detention of noncitizens "*already in*

---

[2] Under narrow circumstances the detained noncitizens may be temporarily paroled. 8 U.S.C. § 1182(d)(5)(A).

*the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). It provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] *may be* arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). This section further states—with exceptions for noncitizens with certain criminal charges—the Attorney General may release a noncitizen on bond or conditional parole. *Id*. § 1226(a)(1)-(2). Critical here, "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

## ANALYSIS

The first issue this Court must address is Petitioner's contention that he is a member of two certified classes and is entitled to relief because of his class membership. Dkt. 1, pp. 13-15. First, Petitioner asserts he is a member of the "Bond Eligible Class" certified in *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Dkt. 1, p.2. The court in that case certified the class as to the Petitioners' claims that the DHS Policy (regarding the DHS's new interpretation of § 1225) violates the INA and statutory due process. *Id*. at *9. The court defined the class as:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.*

Petitioner also asserts he is a member of the class conditionally certified in *Gutierrez v. Baltasar*, No. 25-CV-02720-RMR, 2025 WL 3251143 (D. Colo. Nov. 21, 2025). Dkt. 1, p.2. The class in that case is defined as follows:

> All people who are arrested or detained by Respondents in Colorado pending a decision on whether they are to be removed from the United States based on alleged violations of the Immigration and Nationality Act, or who are otherwise subject to the jurisdiction of an Immigration Court located in Colorado where:
>
> (a) For the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States;
> (b) For the person's most recent entry into the United States, the person was not paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry;
> (c) The person is not a person whose most recent arrest occurred at the border while they were arriving in the United States; and,
> (d) The person is being detained based on Respondents' assertion that they are subject to 8 U.S.C. § 1225(b)(2)(A).

*Gutierrez*, 2025 WL 3251143, at *7.

Petitioner seeks enforcement of the determination both courts made, which is that the "class members are detained under § 1226(a) and entitled to bond hearings." Dkt. 1, p.12. The Respondents assert that "to obtain such relief, [Petitioner] would need to seek relief in those court proceedings," and that the "preliminary determination of whether Petitioner is a class member in those cases is complex and should be made by those courts in the first instance." Dkt. 10, p.7.

The Court assumes without deciding that Respondents are correct and Petitioner would need to seek relief in either or both class action lawsuits to assert

his rights as a class member. However, the Court need not consider whether Petitioner is a member of either of the classes because, for the reasons shared below, the Court finds Petitioner's detention is unlawful on the merits.

Concerning the merits, as Respondents have claimed with nominal success in habeas cases across the country, they contend Mr. Grijalva Esquivel is properly detained pursuant to § 1225(b)(2) because "he entered the United States without ever being admitted and is thus deemed an 'applicant for admission.'" *Id.* at p.14. Respondents believe their interpretation of the statutory scheme is supported by the text of the statute, the legislative history, and the Supreme Court's interpretation of the statute in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *Id.* at pp.14, 16. They also argue that Mr. Grijalva Esquivel cannot show that he was actually denied consideration for bond because the immigration judge "ruled that if the [immigration judge] did have jurisdiction over Petitioner's custody, Petitioner had failed to establish that he is not a danger to the community." *Id.* at pp.17-18.

The Court is not persuaded by these arguments.

## A.    Interpreting the Text of § 1225 and § 1226

Like the other district courts that have considered the issue, the Court's analytical starting point is the text of the statute. If that language is "clear and unambiguous," then "[the Court's] duty is simply to enforce the statute that Congress has drafted." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1103 (10th Cir. 2019). The words of the statute are given "their ordinary meanings, considering both the specific

context in which the word is used and the broader context of the statute as a whole." *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (cleaned up). If "the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989).

## 1.    Section 1225(b)(2)(A)

The pertinent language of § 1225 states:

> [I]n the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).[3]

Respondents argue Petitioner is an "applicant for admission" because he is a noncitizen who entered without inspection. Dkt. 10, p.16. Even accepting this as true, § 1225(b)(2)(A) requires more than simply being an applicant for admission. It also requires the applicant to be "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." *Id*. Further, being an applicant for admission does not necessarily equate with "seeking admission." As the Southern District of New York aptly explained:

> Applicant for admission . . . doesn't require an application of any sort. All that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here. By contrast, 'seeking admission' might mean something more

---

[3] Respondents do not contend § 1225(b)(1) applies to Petitioner.

than that—some active desire or process toward admission.
. . .

What, then, does it mean to 'seek admission?' The INA defines 'admission' as 'the lawful entry of the noncitizen into the United States after inspection and authorization by an immigration officer.' 8 U.S.C. § 1101(a)(13)(A). And 'entry,' which is undefined, can be given its ordinary, contemporary, common meaning. That meaning is 'entering into ... (a country),' which is 'to come or go in.' In a more specific legal context, it also means going into a place. And 'seeking' is written in the present-progressive tense, which 'is used to refer to an action or a state that is continuing to happen.' Putting that all together, 'seeking admission' requires a noncitizen to *continue* to want to *go into* the country.

*J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025) (cleaned up) (emphasis in original) (citing Supreme Court precedent, the Oxford English Dictionary, Black's Law Dictionary, and Merriam Webster Online). Under this plain language, § 1225(b)(2)(A) cannot apply to Petitioner because "you can't go into a place where you already are," and Petitioner has been here for nearly ten years. *Id.*

Respondents dismiss the preceding analysis and point this Court to another portion of the statute that reads: Noncitizens "who are applicants for admission *or otherwise seeking admission*" shall be inspected by immigration officers. Dkt. 10, p.14 (citing 8 U.S.C. § 1225(a)(3)) (emphasis in original).[4] Under this language,

---

[4] Respondents also cite 8 U.S.C. § 1225(a)(5), which states that "[a]n applicant for admission may be required to state . . . the purposes and intentions of the applicant in seeking admission." Dkt. 10, p.14. Respondents reading of this statute is also not persuasive. That is, this statute is consistent with the Court's conclusion that an "applicant for admission" must also be "seeking admission."

Respondents contend "*anyone* falling within the category of 'applicant for admission' [is] to be 'seeking admission' by virtue of that status" *Id*. (emphasis in original). But suggesting that "applicant for admission" is coterminous with "otherwise seeking admission" commits several interpretive errors. First, it isolates this language from the rest of the provision. When read in its entirety, it is clear Respondents have quoted only a portion of a longer list of noncitizens subject to inspection. *See* 8 U.S.C. § 1225(a)(3) (also including noncitizens seeking readmission and noncitizens seeking transit through the U.S.).

Second, Respondents' interpretation runs contrary to the ordinary understanding of lists that use the word "or" when listing things. The word "or" is customarily used in the "disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014). Respondents' explanation of this clause would read the word "or" to mean "including." No canon of construction would allow such a conflation of distinct terms. *Id*.

Third, Respondents' construction "[invites] surplusage into the statute. That Congress chose to include this additional phrase—'seeking admission'—not once but (according to the government) multiple times suggests that it must mean something distinct." *J.G.O.*, 2025 WL 3040142, at *3. Thus, Respondents' statutory interpretation is not persuasive. *See Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 781 (E.D. Mich. 2025) (finding noncitizens who are present in the country for years may technically be considered an "applicant for admission" because they are a

noncitizen present in the United States who has not been admitted but this is "not interchangeable" with a determination that a noncitizen is "seeking admission").

Respondents also rely heavily on the Supreme Court's opinion in *Jennings v. Rodriguez* and contend that the Supreme Court's explanation regarding the scope of § 1225 should guide this Court's analysis. Dkt. 10, pp.14-16. The Court agrees *Jennings* is instructive, but not for the reasons Respondents suggest.

As an initial matter, Respondents' theory is largely undercut by the fact that the Supreme Court's discussion in *Jennings* regarding §§ 1225 and 1226 considered an entirely different question of law. There, the Court was asked to determine whether noncitizens who were indisputably subject to the mandatory detention provisions of §§ 1225(b)(1), 1225(b)(2), or 1226(c), were entitled to "periodic bond hearings," and whether the detention of noncitizens under §§ 1225(b)(1) and (b)(2) is limited to a six-month period. *Jennings*, 583 U.S. at 286. In concluding those provisions contained no time limits, the Supreme Court "said nothing about whether persons like [Mr. Grijalva Esquivel] were subject to those provisions in the first place." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *10 (E.D.N.Y. Oct. 6, 2025).

Respondents next contend that the Supreme Court's characterization in *Jennings* of § 1225(b)(2) as a "catchall" applies to *all* applicants for admission not covered by § 1225(b)(1)—whether they are seeking admission or not—and thus, they are subject to mandatory detention without a bond hearing under § 1225(b)(2). Dkt.

12

10, pp.15-16. But the Supreme Court was more specific than that. It said, as this Court does, that § 1225(b)(2) applies to "[noncitizens] *seeking* admission into the country." *Jennings*, 583 U.S. at 289 (emphasis added). The Supreme Court also notably said § 1226 applies to "[noncitizens] *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). The Court—like the myriad others to have addressed this same argument—is not persuaded by Respondents' analysis of *Jennings*.

### 2.   Section 1226

Section 1226 states in pertinent part:

> On a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1)  may continue to detain the arrested [noncitizen]; and
> >
> > (2)  may release the [noncitizen] on—
> >
> > > (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B)  conditional parole . . .

8 U.S.C.A. § 1226(a)(1), (2). The plain language of this provision is much broader with respect to whom it applies and permits immigration authorities—subject to the exception in §1226(c)—to detain or release any noncitizen "pending a decision on whether the [noncitizen] is to be removed." *Id.*

Section 1226(c) then "carves out a statutory category of [noncitizens] who may

*not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis in original). Under this subcategory, noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities" are not eligible for release and must be detained without bond. *Id.* "Importantly, the plain text of section 1226(c) requires detention for certain noncitizens who are 'deportable' (meaning they were previously admitted to the United States) *as well as* certain noncitizens deemed 'inadmissible' (meaning they have not been admitted to the United States)." *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025) (emphasis in original).

> Relevant here, § 1226(c) requires detention for any noncitizen
>
> who is deemed inadmissible because he is 'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) *and* 'is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements' of certain crimes.

*Id.* (quoting § 1226(c)(1)(E)(i)–(ii)) (emphasis in original).

The Supreme Court has recognized that when Congress creates exceptions to a statute's applicability, it "proves" that absent those exceptions, the statute is generally applicable. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). If this were not the case, the exception would have no purpose. *Id.* Consequently, the plain language of § 1226(c) is further support that the default discretionary bond procedures in § 1226(a) apply to noncitizens who are (1) present in the United States without having been admitted or paroled, and (2) have not been

implicated in any of the enumerated crimes set forth in § 1226(c). *Bostock*, 2025 WL 2782499, at *17; *see also* 8 U.S.C. § 1226(a) (Attorney General may release noncitizen on bond "except as provided in subsection (c)").

If, however, the Court were to accept Respondents' strained interpretation of § 1225(b)(2)—that all applicants for admission, no matter how long they have resided here, are subject to mandatory detention under § 1225(b)(2)(A)—what then would be the purpose of § 1226? A person "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 485 (S.D.N.Y. 2025). Respondents' interpretation would effectively read § 1226 out of the INA.

So, Respondents instead suggest § 1226 would apply to those noncitizens "who *were* admitted (such as on a visa) and then were placed in removal proceedings." Dkt. 10, p.15 (emphasis in original). But there is no indication that Congress intended § 1226 to be limited only to visa overstays." *Lopez Benitez*, 795 F.Supp.3d at 490. To be sure, "[i]f Congress had wished to enact the transformation of the immigration detention system [in the way Respondents] content it did—requiring the detention of millions of people currently living and working in the United States—then it would have said so more clearly." *Bostock*, 2025 WL 2782499, at *24.

Examining the plain language of §§ 1225 and 1226, as well as their context in the greater statutory scheme, supports this Court's conclusion that when read together, these sections "cover [noncitizens] presenting at arrival (under § 1225) and

then *everybody else* (under § 1226)." *J.G.O.*, 2025 WL 3040142, at *4 (emphasis added). Mr. Grijalva Esquivel, as a longtime resident of the United States, is covered with "everybody else."

**B.    Other Factors**

Because the plain text of the statute supports this Court's conclusion that Mr. Grijalva Esquivel is unlawfully detained pursuant to § 1225, the Court need not extend its inquiry beyond this analysis. *Ron Pair Enters., Inc.*, 489 U.S. 235 at 240-41. Nevertheless, the Court briefly addresses the Respondents' argument regarding the legislative history, recent legislative history, and the longstanding agency practices that further support its conclusion.

Respondents argue that the legislative history supports their contention that Petitioner is being detained pursuant to § 1225. Dkt. 10, pp.16-17. Specifically, Respondents argue that Congress' purpose in enacting the statutes was to cure an "anomaly" that allowed "non-citizens who had entered without inspection [to] take advantage of greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." *Id.* at p.16 (citing *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010)). This Court agrees with other courts in this district who have concluded "Congress' concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting *all*

16

inadmissible noncitizens to mandatory detention." *Hernandez*, 2025 WL 2996643, at

*7 (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL

2637503, at *12 (N.D. Cal. Sept. 12, 2025)); *see also Merchan-Pacheo v. Noem*, No.

1:25-cv-0386-SBP, 2026 WL 88526, at **11-12 (D. Colo. Jan. 12, 2026).

Recent legislative history further undermines Respondents' argument. In

January of 2025, Congress passed the Laken Riley Act, which amended 8 U.S.C. §

1226(c)(1)(E). Pub. L. No. 119-1, 139 Stat. 3 (2025). Prior to its amendment, § 1226(c)

required the detention of noncitizens "present in the United States without being

admitted or paroled" who had committed certain offenses such as crimes of moral

turpitude. 8 U.S.C. § 1226(c)(1)(E). The Laken Riley Act expanded the list of offenses

to include "burglary, theft, larceny, shoplifting, assault of a law enforcement officer,

. . . or any crime that results in death or serious bodily injury to another person." *Id*.

§ 1226(c)(1)(E). If the Court were to accept Respondents' theory, the Laken Riley Act

amendments would have no legal effect because those same people would already be

subject to mandatory detention under § 1225 even without the additional commission

of a crime. Such a conclusion is untenable. *Stone v. INS*, 514 U.S. 386, 397 (1995)

("When Congress acts to amend a statute, we presume it intends its amendment to

have real and substantial effect.").[5]

---

[5] The Court is also persuaded by the opinions from those district courts who have engaged in extensive analysis of the statute's full legislative history. These analyses are even more reason for this Court to join the majority of district courts to have reviewed these issues and found as the Court does here. *See e.g.*, *Barco*, 2025 WL

In addition to these recent legislative amendments, the Court also notes Respondents' statutory interpretation is inconsistent with the statute's implementing regulations. *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *7 (D. Colo. Oct. 22, 2025). "Though not binding, 'interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning.'" *Id.* (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)).

Pertinent here, 8 C.F.R. § 235.3(c), which corresponds to § 1225(b)(2), states that it applies to "Arriving [noncitizens] placed in proceedings under section 240 of the Act or [noncitizens] referred for an asylum merits interview under § 208.2(a)(1)(ii) of this chapter." This regulatory language mirrors the statutory language of § 1225(b)(2) except it replaces "applicant for admission . . . seeking admission" with "any arriving [noncitizen]." *Compare* 8 U.S.C. § 1225(b)(2)(A) *with* 8 C.F.R. § 235.3(c). Indeed, the "regulation appears to contemplate that applicants seeking admission are a subset of applicants 'roughly interchangeable' with 'arriving [noncitizens].'" *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC (EMC), 2025 WL 2822876, at *11 (N.D. Cal. Oct. 3, 2025) (quoting *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). In turn, "[a]rriving [noncitizens]" are specifically defined by regulation as applicants for admission "*coming* or attempting to *come into*

3295903, at **7-9; *Bostock*, 2025 WL 2782499 at *23; *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *10 (E.D. Cal. Oct. 9, 2025).

the United States at a port-of-entry." 8 C.F.R. § 1.2 (emphasis added).

This language plainly cannot apply to Mr. Grijalva Esquival, who already resides in the United States and has for almost ten years. *See Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *15 (D. Nev. Sept. 17, 2025) (explaining that Respondents' interpretation of § 1225 is "inconsistent with . . . decades of agency practice"); *Chang Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *9 (D. Me. Sept. 29, 2025) ("[I]t would contravene decades of precedent to adopt the position that any noncitizen present in the country without admission is subject to mandatory detention without bond hearing. . . . Until recently, the Executive Branch applied § 1226(a) to noncitizens without documentation already present in the United States.").

Lastly, Respondents argue that Mr. Grijalva Esquivel has not shown that he has actually been denied the opportunity for a bond hearing because he had a custody redetermination hearing where an immigration judge ruled that, *if it did have jurisdiction* to rule on Petitioner's custody, "Petitioner had failed to establish that he is not a danger to the community." Dkt. 10, pp.17-18. But as Respondents point out, the immigration court concluded that it did not have jurisdiction because Petitioner was subject to mandatory detention pursuant to § 1225. Dkt. 10-2. This Court will not give any authority to dicta from an immigration court which explicitly states it does not have jurisdiction to rule on an issue.

C.    **Appropriate Remedy**

In his Petition, Mr. Grijalva Esquivel requests release from detention or, in the alternative, a bond hearing. Dkt.10, p.15. However, § 1226 does not require release—it provides DHS the discretion to grant a noncitizen release on bond. 8 U.S.C. § 1226(a)(2). Additionally, the Court concludes that an immigration judge is in a better position to consider whether Petitioner poses a flight risk and a danger to the community. *See Loa Caballero*, 2025 WL 2977650, at *9. Accordingly, the proper remedy is to provide Mr. Grijalva Esquivel with a bond hearing before an immigration judge. *Hernandez*, 2025 WL 2996643, at *8 (concluding the same).

*        *        *

For the reasons shared above, Oliver Grijalva Esquivel's Petition for Habeas Corpus is GRANTED.

The Court finds that Mr. Grijalva Esquivel is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

IT IS ORDERED Respondents shall provide Mr. Grijalva Esquivel with a bond hearing under 8 U.S.C. § 1226(a) within SEVEN DAYS of the date of this Court's order.[6]

IT IS FURTHER ORDERED Respondents shall file a status report within TEN DAYS of the date of this Court's Order to certify compliance. The status report shall

---

[6] In so ordering, the Court makes no comment regarding whether Petitioner is ultimately entitled to release on bond.

include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

IT IS FURTHER ORDERED pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and to preserve the Court's jurisdiction, Respondents SHALL NOT REMOVE Petitioner from the District of Colorado or the United States unless or until this Court or the Court of Appeals for the Tenth Circuit vacates this Order.

DATED:   January 29, 2026

BY THE COURT:

_____

S. Kato Crews
United States District Judge